1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9    TRI-STATE GENERATION AND          )   No. CV 08-272-PHX-MHM
     TRANSMISSION ASSOCIATION,         )
10   INC., et al.,                     )   **ORDER**
                                       )
11            Plaintiffs,              )
                                       )
12   vs.                               )
                                       )
13                                     )
     BNSF RAILWAY COMPANY,             )
14                                     )
              Defendant.               )
15                                     )
     _____ )
16

17            Currently before the Court are (1) Defendant BNSF Railway Company's

18   ("BNSF") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

19   Procedure ("FRCP") (Dkt. #25); (2) Plaintiffs Tri-State Generation and Transmission

20   Association, Inc. ("Tri-State") and Salt River Project Agricultural Improvement and

21   Power District's ("SRP") motion for an expedited hearing on their declaratory judgment

22   claim pursuant to FRCP 57 (Dkt. #28); (3) Tri-State and SRP's motion to expedite their

23   motion for an expedited hearing on their declaratory judgment claim (Dkt. #29); and (4)

24   SRP's motion to supplement its response to BNSF's motion to dismiss (Dkt. #45).  After

25   reviewing the pleadings and determining that oral argument is unnecessary, the Court

26   issues the following order.

27

28

1    **I.     BACKGROUND**

2          On February 11, 2008, Plaintiffs filed a complaint seeking declaratory judgment

3    and asserting a claim for interference with contract or prospective contractual relations.

4    (Dkt. #1).  Specifically, Plaintiffs seek a judicial declaration of the parties' respective

5    rights and obligations under the Coal Transportation Agreement BNSF-12354 ("CTA"),

6    which was entered into between the predecessor-in-interest to Plaintiff Tri-State and

7    Defendant BNSF on October 21, 2003.  (Id., pp. 2-3).

8          Specifically, Paragraph 3.1 of the CTA states, in pertinent part, that "[i]f Tri-State

9    or its agent shall control the Coal freight transportation for Unit Four, such Coal tonnage

10   from origins shall be subject to the terms of [the CTA]."  (Dkt. #1, p.4).  In addition, on

11   January 21, 2008, Plaintiffs Tri-State and SRP entered into the Transportation Control

12   and Management Agreement ("TCMA"), which purports to give Tri-State control of the

13   coal freight transportation for the Springerville electrical power station Unit Four ("Unit

14   Four").  (Id., p.6).  As such, Plaintiffs contend that pursuant to the TCMA and Paragraph

15   3.1 of the CTA, the CTA applies to the coal freight transportation for Unit Four.  (Id.,

16   p.7).  BNSF, on the other hand, argues that the CTA does not apply to the transportation

17   of coal to Unit Four because Tri-State does not control the transportation of coal for Unit

18   Four as contemplated by the CTA.  (Dkt. #27, pp. 2-3).

19         On March 14, 2008, BNSF filed a motion to dismiss SRP as a Plaintiff with

20   respect to Plaintiffs' declaratory judgment claim and to dismiss Plaintiffs' claim for

21   intentional interference with contractual relations.  (Dkt. #25).  Then, on March 20, 2008,

22   Plaintiffs filed a motion for expedited hearing of their declaratory judgment claim

23   pursuant to Rule 57 of the Federal Rules of Procedure (Dkt. #28), as well as a motion to

24   expedite (Dkt. #29).  Also, on April 23, 2008, Plaintiffs filed a motion to supplement their

25   response in opposition to BNSF's motion to dismiss.  (Dkt. #45).

26   //

27   //

28

1   **II.      MOTION TO DISMISS**

2          BNSF requests that the Court (1) dismiss SRP as a Plaintiff with respect to the

3   declaratory judgement claim for lack of standing, and (2) dismiss Plaintiffs' claim for

4   intentional interference with contractual relations for failure to state a claim under Rule

5   12(b)(6) of the Federal Rules of Civil Procedure.

6          "The motion to dismiss for failure to state a claim is viewed with disfavor and is

7   rarely granted." Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir.

8   1997).  The Court will not dismiss a complaint unless it appears beyond a doubt that the

9   plaintiff can prove no set of facts that would entitle him to relief.  See Morley v. Walker,

10  175 F.3d 756, 759 (9th Cir. 1999).  In determining whether a complaint states a claim, all

11  allegations of material fact are taken as true and construed in the light most favorable to

12  the nonmoving party.  See Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135

13  F.3d 658, 661 (9th Cir. 1998).  However, the court is not required "to accept as true

14  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

15  inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

16

17          **A.    Count I: Standing / Declaratory Judgment**

18          BNSF does not dispute that Plaintiff Tri-State may assert a claim for declaratory

19  judgment. (Dkt. #25, p.6).  Nonetheless, BNSF contends that Plaintiff SRP "does not

20  have standing to bring a declaratory judgment claim seeking to interpret the CTA

21  between BNSF and Tri-State because SRP is neither a party to nor an intended third-party

22  beneficiary of the CTA."  (Id., pp. 5-6).  As such, BNSF requests that the Court dismiss

23  SRP as a Plaintiff with respect to Plaintiffs' declaratory judgment action.  (Id.).  Plaintiffs

24  respond that BNSF is incorrect in its characterization of SRP's interest in the CTA, and

25  also that BNSF misstates the law with regard to the Federal Declaratory Judgement Act,

26  28 U.S.C. § 2201.  (Dkt. #36, p.4).

27          The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(the "Act") incorporates

28  Article III's mandate that federal courts may exercise jurisdiction only over an actual case

1    or controversy.  See U.S. Const. art. III, § 2; Gov't Employees Ins. Co. v. Dizol, 133 F.3d

2    1220, 1222 (9th Cir.1998) ("A lawsuit seeking federal declaratory relief must first present

3    an actual case or controversy within the meaning of Article III, section 2 of the United

4    States Constitution.").  As such, to determine whether an actual controversy exists under

5    the Act, the question is whether the facts show that "there is a substantial controversy,

6    between parties having adverse legal interests, of sufficient immediacy and reality to

7    warrant the issuance of a declaratory judgment."  Golden v. Zwickler, 394 U.S. 103, 108

8    (1969) (quotations omitted).  However, a party does not have standing to bring a

9    declaratory judgment claim regarding rights and obligations under a contract to which it

10   is neither a party nor a third-party beneficiary.  See Mardian Equip. Co. v. St. Paul Fire &

11   Marine Ins. Co., 2006 WL 2456214, at *5-6 (D.Ariz. 2006); cf. Newcal Industries, Inc. v.

12   Ikon Office Solution, 513 F.3d 1038 (9th Cir. 2008) (privity of contract was not necessary

13   because the threat of suit was enough to create standing since a threatened party may seek

14   a declaration that the threatening party's putative rights are invalid).

15         SRP is not a party to the CTA; that fact is undisputed.  (Dkt. #25, p.5; Dkt. #36,

16   p.7).  However, Plaintiffs cite the Court to Dixon v. Edwards, 290 F.3d 699 (4th Cir.

17   2002), for the proposition that a litigant seeking declaratory relief need not necessarily be

18   a party to or third-party beneficiary of the contract in question in order to assert a claim

19   for declaratory judgment.  (Dkt. #36, pp. 7-8).  However, Dixon is inapplicable to the

20   case at hand.  Dixon involved a declaratory judgment action by the bishop seeking to

21   invalidate an unauthorized employment contract between a local vestry of the church and

22   a priest.  Id. at 704-05.  Importantly, the local vestry's right to enter into the contract was

23   subject to the bishop's approval under certain church rules, and thus the bishop, by virtue

24   of her position in the church, had the right to seek a declaration on behalf of the church

25   that the agreement between the local vestry of the church and the priest was void.  Id. at

26   711-12.  No such relationship exists between the parties in this case.  Plaintiffs cite the

27   Court to no relevant authority that exempts this case from the general rule that a party

28

- 4 -

1   does not possess standing to bring a declaratory judgment claim regarding rights and

2   obligations under a contract to which it is neither a party nor a third-party beneficiary.

3          In addition, SRP contends that it is a third-party beneficiary of the CTA because

4   "[p]aragraph 3.1 of the CTA explicitly provides that all provisions of the CTA, including

5   the beneficial pricing structure, apply to 'Unit Four.'" (Dkt. #36, p.8).  As such, SRP

6   argues that Tri-State and BNSF intended that Unit Four (and by extension SRP, as the

7   owner of Unit Four) be the third-party beneficiary of the CTA.  (Id., pp. 8-9).  However,

8   in order for a person to recover as a third-party beneficiary of a contract, "an intention to

9   benefit that person must be indicated in the contract itself.  The contemplated benefits

10  must be both intentional and direct, . . . and it must definitely appear that the parties

11  intend to recognize the third party as the primary party in interest."  Norton v. First

12  Federal Sav., 128 Ariz. 176, 178 (1981) (quotations omitted).  The reference to Unit Four

13  in Paragraph 3.1 of the CTA is indirect and does not establish an intention to benefit Unit

14  Four or the owners of Unit Four.  Rather, Unit Four is mentioned only to refer to the

15  benefit that Tri-State would receive under the contract if Tri-State were to control the coal

16  freight transportation for Unit Four.  As such, the Court finds that SRP is not a third-party

17  beneficiary of the CTA and thus may not assert a declaratory judgment claim regarding

18  the CTA between Tri-State and BNSF.

19         The Court has also considered SRP's supplemental response to BNSF's motion to

20  dismiss.  (Dkt. #45).  SRP contends that because SRP is a signatory to the TCMA and the

21  Court will have to determine whether the TCMA transfers "control" of the transportation

22  of Unit Four coal to Tri-State within the meaning of the CTA, SRP is not a stranger to the

23  dispute and has standing to assert its declaratory judgment claim.  (Id., p.2).  The Court

24  disagrees.  The fact that the Court may have to determine what the term "controls" means

25  within the CTA, and thus indirectly the interplay between the CTA and the TCMA, does

26  not somehow give SRP standing to seek a declaration against BNSF regarding the CTA

27  between BNSF and Tri-State.

28

**B.   Count II: Intentional Interference with Contractual Relations**

BNSF contends that Plaintiffs' claim of intentional interference with contractual relations fails as a matter of law.  (Dkt. #25, pp. 2-5).  Specifically, BNSF states that in order to establish a claim for interference with contractual relations under Arizona law, a defendant's wrongful interference must induce or cause a breach or termination of a plaintiff's relationship or expectancy with a third-party.  (Dkt. #44, pp. 6-7).  As such, BNSF argues that Plaintiffs' claim must fail because Plaintiffs do not allege that there has been an actual breach or termination of the TCMA.  (Id.).  To support this argument, BNSF points to a section in the TCMA, in which Plaintiffs purport to waive any breach of the TCMA if either party is unable to perform under the agreement because of BNSF's refusal to acknowledge that coal for Unit Four may be transported under the terms of the CTA.  (Id., p.7; TCMA, ¶2, Dkt. #36, p.13).  In addition, BNSF argues that Plaintiffs' claim must fail because Plaintiffs have not adequately alleged that they have been damaged as a result of BNSF's alleged interference.  (Dkt. #44, p.9).

Plaintiffs respond that "[b]y failing to acknowledge that the CTA applies to the transportation of such coal, BNSF has interfered with [Plaintiffs'] ability to abide by the terms of the TCMA. . . . whether or not that conduct leads to a breach of the TCMA."  (Dkt. #36, pp. 13-14).  In other words, although Plaintiffs appear to acknowledge that there has been no actual breach of the TCMA, they nonetheless contend that BNSF's alleged wrongful interference "disable[d] Tri-State from performing under the TCMA," which they contend is sufficient to establish a claim for intentional interference of contractual relations under Arizona law.  (Id., p.11).  In addition, Plaintiffs state that although the exact amounts of their injuries cannot be calculated at this time, the allegations of financial harm in their complaint are sufficient to put BNSF on notice and satisfy the liberal requirements of Rule 8 of the Federal Rules of Civil Procedure.  (Dkt. # 36, pp. 14-15).

The prima facie elements of intentional interference with contractual relations are well settled in Arizona; they are: (1) the existence of a valid contractual relationship or

- 6 -

1   business expectancy; (2) the interferer's knowledge of the relationship or expectancy, (3)

2   intentional and improper interference inducing or causing a breach or termination of the

3   relationship or expectancy; (4) resultant damage to the party whose relationship or

4   expectancy has been disrupted.  See Neonatology Associates, Ltd. v. Phoenix Perinatal

5   Associates Inc., 216 Ariz. 185, 188 (Ariz. App. Div. 1, 2007) (citing Wallace v. Casa

6   Grande Union High School Dist. No. 82 Bd. Of Governors, 184 Ariz. 419, 427 (Ariz.

7   App. Div. 2, 1985)).  The third and fourth elements are at issue here, i.e., whether a

8   breach or termination of Plaintiffs' relationship or expectancy has occurred, and whether

9   Plaintiffs have suffered damages as a result of the alleged disruption of their contractual

10  relationship or expectancy.

11         "[T]he gist of the tort of interfering with contractual relations is the inducement of

12  a third party to breach a contract or not to enter a contract with the plaintiff."  D'Oca v.

13  Delfakis, 130 Ariz. 470, 472 (App. 1981) (citing Restatement of Torts 2d, § 766).

14  However, "[w]rongful interference rests on the improper conduct by the defendant, a

15  stranger to the contract, not on whether a breach followed."  Bar J Bar Cattle Co., Inc. v.

16  Pace, 158 Ariz. 481, 483 ( App. 1988).  Further, although the fact "[t]hat no breach of

17  contract occurred should give [courts] pause in determining whether defendant's conduct

18  was wrongful, [] it does not preclude liability if [the defendant] otherwise caused harm."

19  Id.  Indeed, "a cause of action in tort is available to a party to any contract, at-will or

20  otherwise, when a third party improperly and intentionally interferes with the

21  performance of that contract."  Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370,

22  386-88 (1985), superseded by A.R.S. §§ 23-1501 to -1502 (Supp. 2003).

23         BNSF argues that Plaintiffs' claim must fail because Plaintiffs do not allege an

24  actual breach or termination of the TCMA.  (Dkt. #25, pp. 2-5).  The Court agrees that if

25  BNSF were correct in this regard, then under Arizona law Plaintiffs would not be able to

26  assert a claim for intentional interference with contractual relations.  In order to support

27  such a claim, Plaintiffs must allege that BNSF's actions either caused Plaintiffs to breach

28  the TCMA or caused the termination of the TCMA (or the termination of Plaintiffs'

1   expectancy in maintaining their business relationship under the TCMA).[1]  Accordingly,

2   BNSF states that the "plaintiffs have not alleged that either SRP or Tri-State breached or

3   terminated any contract between them."  (Id., p.3).  However, the Court disagrees.

4        Plaintiffs state that "[b]y refusing to acknowledge that the CTA applies to the

5   transportation of coal for use in Unit Four under these circumstances, BNSF has made it

6   impossible for Tri-State to perform its obligations under the TCMA – to transport coal for

7   use in Unit Four at the rates set forth in the CTA."  (Dkt. #36, p.11).  Thus, Plaintiffs

8   allege that BNSF's actions do not allow Tri-State to perform its obligations under the

9   TCMA, which is an allegation that BNSF has in effect terminated the TCMA.  However,

10  the Court notes that due to ¶ 2.2 of the TCMA, such termination is merely temporary – if

11  Plaintiffs prevail on their declaratory judgment claim, then the terms of the CTA will

12  apply to the TCMA and the TCMA will remain in effect pursuant to ¶ 2.2 of the TCMA.[2]

13

14  _____

15  [1]Plaintiffs also point to the term "expectancy" in the third element of a claim for
intentional interference with contractual relations and argue that their claim is valid because
16  it is sufficient to allege that BNSF wrongfully interfered with Plaintiffs' expectations under
the TCMA.  However, "expectancy" in this context refers merely to the expectancy of
17  entering into or maintaining a business relationship, and thus Plaintiffs' can at most contend
that BNSF interfered with their expectancy of maintaining their business relationship under
18  the TCMA.  Nonetheless, a claim for the intentional interference of contractual relations still
requires a breach or termination of that expectancy, which BNSF argues Plaintiffs do not
19  actually allege in their complaint.  Thus, the issue remains focused on whether Plaintiffs have
20  sufficiently alleged a breach or termination.

21  [2]Paragraph 2.2 of the TCMA provides, in pertinent part:
    As of the date of this Agreement, BNSF has refused to acknowledge that coal
22      for Unit 4 may be transported under the terms of [the CTA].  Solely as a result
    of BNSF's position in this regard, SRP has been compelled to enter into
23      discussions with BNSF with respect to an Interim BNSF Agreement in order
    to secure railcars for the transportation of coal to Unit 4 and a transportation
24      agreement for same.  Tri-State and SRP jointly waive any breach of this
    Agreement arising from SRP's or Tri-State's actions or inactions, whether
25      occurring before or after the date hereof, with respect to the interim BNSF
26      Agreement or SRP's exercise of any rights and obligations under any Interim
    BNSF Agreement.
27

28  TCMA, ¶ 2.2.

1   Nonetheless, if BNSF's alleged wrongful interference made it impossible for Tri-

2   State to perform its obligations under the TCMA and SRP is economically damaged

3   during the pendency of this litigation, then the TCMA was in effect terminated during this

4   litigation and Plaintiffs should be able to recover any damages that they have suffered.

5   The Court is not willing to apply a more wooden definition to the requirement of alleging

6   breach or termination of a contract in order to assert a claim for intentional interference

7   with contractual relations.  As such, regardless of whether Plaintiffs anticipated BNSF's

8   refusal to recognize the application of the CTA to the TCMA and included a waiver of

9   liability with respect to breaching the TCMA under such circumstances, Plaintiffs may

10  nonetheless satisfy the elements for a claim of intentional interference with contractual

11  relations by alleging that BNSF's actions wrongfully terminated, albeit temporarily, the

12  TCMA.  Thus, construing Plaintiffs' allegations in the light most favorable to the

13  nonmoving party, the Court finds that Plaintiffs' allegations that BNSF's actions in effect

14  terminated the TCMA by not allowing Tri-State to perform its obligations under the

15  agreement are sufficient to allow Plaintiffs' claim for intentional interference with

16  contractual relations to survive the instant motion to dismiss.

17  However, BNSF also argues that Plaintiffs' claim for intentional interference with

18  contractual relations must fail because Plaintiffs have not properly alleged that they have

19  been damaged as a result of BNSF's alleged interference with the TCMA.  (Dkt. #25, pp.

20  4-5).  BNSF contends that "Plaintiffs do not allege [ ] any facts to show how they have

21  been economically damaged."  (Dkt. #44, p.10).  Plaintiffs respond that their complaint

22  sufficiently alleges damages because it alleges that SRP has been forced to begin making

23  other, more expensive, arrangements for the delivery of coal to Unit Four, which causes

24  injury to both SRP and Tri-State.  (Dkt. #36, pp. 14-16; Complaint, ¶¶ 25, 38).  Although

25  BNSF is correct that the Court need not accept mere conclusory allegations, construing

26  the allegations in the light most favorable to the nonmoving party, the Court finds that

27  Plaintiffs have sufficiently alleged damages resulting from BNSF's alleged interference in

28  order to survive BNSF's motion to dismiss.  If Plaintiffs succeed on their declaratory

1  judgment claim and establish that they have in fact suffered economic damages during the

2  temporary termination of the TCMA, then Plaintiffs may recover those damages through

3  their claim for intentional interference with contractual relations.  Thus, the Court finds

4  that Plaintiffs have adequately alleged the elements for a claim of intentional interference

5  with contractual relations.

6

7  **III.    MOTIONS FOR EXPEDITED HEARING**

8          Plaintiff requests that the Court order an expedited hearing on Plaintiffs'

9  declaratory judgment claim pursuant to Rule 57 of the Federal Rules of Civil Procedure.

10  (Dkt. #28).  Plaintiffs contend that "the dispute at issue does not involve difficult,

11  complex or lengthy contract issues or claims," and that "early resolution of the

12  Declaratory Judgment Claim will resolve the disputes between the parties, except for

13  calculation of damages as a result of BNSF's wrongful conduct."  (Dkt. #43, pp. 2-3).

14  Plaintiffs state that extensive discovery, expert or otherwise, is not required in this action,

15  and that without expeditious consideration pursuant to Rule 57, Plaintiffs will suffer

16  prejudice from having to commit time, resources, and money to the delivery of coal under

17  an arrangement different from and more costly than the arrangements contemplated by

18  the CTA.  (Id., pp. 4, 7).  Moreover, Plaintiffs state that "[o]ther claims, including the

19  Interference Claim, rise or fall first on whether the CTA applies to transportation of Unit

20  Four coal."  (Id., p.8).

21          BNSF responds that its motion to dismiss should be resolved before the Court

22  orders Rule 57 treatment (a position that is now moot), that Plaintiffs' harm relates to

23  price only and not availability, and that Plaintiffs' proposed schedule is unfairly

24  prejudicial to BNSF.  (Dkt. #s 34, 35).  BNSF also contends that Plaintiffs were aware of

25  this possible contract dispute with BNSF and delayed filing this action for approximately

26  fourteen months.  (Dkt. #34, p.1).  Moreover, BNSF states that the issues, witnesses, and

27  evidence necessary for the declaratory judgment claim and the intentional interference

28

1    claim significantly overlap, and thus it would be a waste of time and resources to try them

2    separately.  (Id., pp. 3-4.)

3        Rule 57 states, in pertinent part: "The court may order a speedy hearing of an

4    action for a declaratory judgment and may advance it on the calendar."  Fed.R.Civ.P. 57.

5    As such, it is within the Court's discretion to order a speedy hearing on Plaintiffs'

6    declaratory judgment claim.  The Court agrees with Plaintiffs that this issue appears to be

7    a fairly straight-forward issue of contract interpretation, concerning few provisions and

8    terms and only two contracts, the CTA and the TCMA.  In addition, the Court agrees with

9    Plaintiffs that the resolution of Plaintiffs' declaratory judgment claim is likely to be

10   dispositive in this matter.  Thus, the Court will grant Plaintiffs' motion for an expedited

11   hearing on its declaratory judgment claim.

12       However, the Court is not convinced with respect to the prejudice Plaintiffs' allege

13   they might suffer, and the Court agrees with BNSF that any delay in the resolution of this

14   matter relates to price, which may potentially be recovered if Plaintiffs succeed on their

15   claims against BNSF.  Further, the Court agrees with BNSF's statement that the issues

16   and discovery on Plaintiffs' claims significantly overlap, and it appears that neither of

17   Plaintiffs' claims should not require extensive discovery.  Thus, the Court is reluctant to

18   bifurcate the scheduling deadlines in this matter, and thus the Court will grant Plaintiffs'

19   request for expeditious handling of this case only to the extent that the Court will consider

20   imposing an expedited discovery and briefing schedule for the entire case at the Rule 16

21   Scheduling Conference.  The Court has reviewed the parties' April 15, 2008 joint case

22   management report, and the Court is amenable to neither set of proposed dates.  As such,

23   the Court directs the parties to confer and submit an amended joint case management

24   report that contemplates the Court's desire to impose an expedited schedule in this case.

25

26       **Accordingly,**

27       **IT IS HEREBY ORDERED** that Plaintiff SRP's motion to supplement its

28   response to Defendant's motion to dismiss (Dkt. #45) is GRANTED.

1    **IT IS FURTHER ORDERED** that Defendant's motion to dismiss is GRANTED

2    IN PART.  (Dkt. #25).

3    **IT IS FURTHER ORDERED** that Plaintiffs' motion for an expedited hearing

4    pursuant to Rule 57 of the Federal Rules of Civil Procedure (Dkt. #28) is GRANTED IN

5    PART.

6    **IT IS FURTHER ORDERED** that Plaintiffs' motion to expedite (Dkt. #29) is

7    DENIED as moot.

8    **IT IS FURTHER ORDERED** that the parties' are directed to file an amended

9    joint case management report by 9:00 a.m. on June 24, 2008, taking into account the

10   Court's scheduling preferences as stated above.

11   **DATED this 16th day of June, 2008.**

Mary H. Murguia
United States District Judge